Alphamont Software, Inc. v. Sorna Corporation Alphamont Software, Inc. v. Sorna Corporation Alphamont Software, Inc. v. Sorna Corporation Alphamont Software, Inc. v. Sorna Corporation Alphamont Software, Inc. v. Sorna Corporation Good morning. May it please the Court, I'm Bill LeBrow here on behalf of Alphamont Appellate First, I thought I'd just address the Court's questions regarding Article 3 standing briefly Just comment on a few of the responses that Sorna recently submitted Notably, in their response, Sorna did not contest any of the following Didn't contest that it's filed over half a dozen lawsuits Didn't contest that none of them have been determined on the merits Didn't contest that it filed a lawsuit against Paxgear's MediaWriter for infringement of the 408 patent Didn't contest that Alphamont's Outbox product provides the same functions in the same way as MediaWriter They didn't contest that Sorna refused to agree not to sue Alphamont for infringing the 408 patent and the four related patents The thrust of their argument appears to be that the affluent Mr. Kavanaugh stated that he does not believe the Outbox infringes the 408 patent As noted in his affidavit, he also did not believe that the MediaWriter infringed the 408 patent either But that did not stop Sorna from suing Paxgear Apparently the defendant's position is that based on that statement alone, there's no standing If that were true and the defendant's infringement opinion were determinative, I don't think there would be many patent lawsuits As a result, I don't think there's much question on the standing issue Turning to the more important issue, the issues relating to the final decision issued by the board As mentioned, Sorna is a highly digitized company, which is the reason that this IPR was filed But when we get to the merits, that's not really something for us to worry about I'm just putting it in context because it is a reason that we don't believe the board fairly analyzed the issues in the case The question was whether or not you were required to say more about what modifications of—how do you pronounce the reference? I pronounce it Kale, but I've never heard the name In your petition, and the board said this amounted to a significant evidentiary gap because they said that you needed to do more It was a substantial modification that would have been necessary to Kale, and you needed to do more We've got a deferential standard of review here How is it that there's sufficient basis to overturn the board's conclusion with respect to the sufficiency of our statement made in the petition And the significant modifications that the board concluded were necessary Thank you, Your Honor, and that is the primary issue here And I believe that there's no question that our response, our petition, did include Kale and argued why Kale did render the 408 patent obvious In reply, the patent owner raised some issues relating to this term called the perimeter table, which was in the— But there's no question that there was something missing in Kale, that Kale didn't deal with the DICOM stuff or whatever So you agree you had to make some representation in your petition about how you combined Kale with the other reference, right? Well, Kale applied to all data. It didn't limit it to any data In fact, we quoted sections from Kale that says this can be applied to all data It wasn't until the patent owner raised the issue that maybe this perimeter table wouldn't work with DICOM data that we addressed it both in Dr. Ory's deposition So the question that we have to decide, right, is was that a significant enough gap? Was the board right that that was a gap in terms of what you needed to come forth initially? Because of the failure of Kale to specifically deal with this other DICOM stuff And we review that for substantial evidence I think we don't—we can get to that, and I think the answer is that our position was thorough enough But the case law, and I'm quoting from Apple v. Andrea Electronics, says Further, any ambiguity as to whether Apple raised the new argument on reply is eliminated when we consider whether Apple's reply arguments are responsive to arguments raised in Andrea's patent owner's response As we have regularly held, the petitioner, in an inter-parties review preceding May, introduced new evidence after the petition stage if the evidence is a legitimate reply to evidence introduced by the patent owner And it goes on to say, stepping back a bit distance persuades us that the board's decision to ignore Apple's response of arguments to issues raised by Andrea in its patent owner's response is not supported as a matter of law And the conclusion that the reply brief constitutes an impermissible new matter is an abuse of discretion So there's two standards If it's made in response to the reply, then it comes in, and the board erred by not analyzing what was submitted in reply to issues raised by the patent owner So you think there's no requirement in terms of what you have to lay out in your petition? Because our legal standard is, as long as it's in the reply, it's okay, and we can throw it in then, and we don't have to put anything in the petition? That's what Apple stands for, and there's another case here There are, though, plenty of cases that hold that the petition has to particularly set forth the specific grounds on which the parties are relying, including mapping claims particularly to the prior order prior to the claims I understand what you're saying, that there's also the board's rule that says you can have new information so long as it's responsive to a prior plea, to the institution's decision or the reply But can't the board rely on both of those grounds for saying that they're going to exclude this evidence? Well, I think you're right. I think the board, as in the Apple case, found that both. It was in response to the petitioner's response, so it comes in, and there was no factual reason to exclude it In the Anacor vs. Iancu case, the petitioners submitted two new references as part of their argument, and those were allowed to come in because they were in response to the petitioner's or the patent owner's reply Do I understand the facts right? In this case, you relied, for obvious purposes, on CAIL, and then after the patent owner came in and explained the problems with that, in reply, for the first time, you come in with arguments about how you could modify CAIL That seems like introducing a new reference, or introducing a new portion of a reference, in reply, which we clearly held was outside the scope of the petition First of all, the clarification that was made on reply was not new evidence. Basically, the clarification was that a parameter table is equivalent to a database table And both Dr. Ori, who is Altamont's expert, and Dr. Kia, who is Swern's expert, agreed that a parameter table could be modified to accommodate the DICOM images So, how much of that Dr. Ori declaration came with the reply? You're introducing evidence that the reference you relied on for obviousness, which has been argued not to support obviousness, could be modified in a way that you never presented as part of your petition or initial briefing That's because it was never an issue. We had an understanding You have the obligation to establish obviousness. All of the elements, all of the parameters. The patent owner pointed out a deficiency in there, and your comeback wasn't, oh no, what we provided does in fact satisfy obviousness Your response was, well, the thing could be modified and a skilled artisan would know how to do that. That's a new ground. That's a new argument No, I don't think that was the position. The position was that the parameter table, which is what is called out in CAIL, in which the patent owner created a very narrow definition of, we accepted that and said even under that definition, CAIL still teaches it And this is how. And both Dr. Ori and Dr. Kia confirmed that a parameter table could be modified. You can call it a database table It could be modified so it can be used for DICOM data, but it wasn't on its face disclosing that Would you describe that the same as a parameter table? I'm sorry, yes. Appendix 1310 Is that the first volume or the second volume? I believe that's the second volume Give me a second. Let me deal with you And the question is, would you describe that as the same as a parameter table in discussing the database table that Dr. Ori identified? He said the roof stuff underneath could be described as a parameter table, but a SQL database table, some people might call it a parameter table So it's just semantics and computer diction You're looking at page 80 on this appendix, page 1310, right? Yeah 80 at the top, round lines 3 and 4 Yeah, I'm looking at 78, 15 to 89 is the area that's quoted there Can I just, I mean, we've read the entire opinion and the board obviously has an alternative holding, which is you lose on the merits And in connection with that, it makes, sort of, it says that looking at the experts, having considered both experts now, even if you considered everything the expert says He says, CAIL's teaching are limited and its type of processing of the data system would not work on DICOM formatted data without significant modifications for which CAIL provides no teachings or guidance If we take that as correct, that's the board's conclusion, having looked at all the evidence Doesn't that support the initial conclusion that you required, there were significant modifications necessary to CAIL to work on DICOM and that CAIL has no teaching or guidance as to how those modifications would be made And if we accept that as correct, under whatever standard of review we're doing, then why weren't you required to, in the first instance, in support of your petition, provide that? Well, I think there's two ways to answer that One, as discussed, the board clearly said they weren't going to consider the information submitted in reply And at page 39 of the brief, I think there's some dicta in there that's very confusing on whether they considered it with that statement or not Page 33, they say even if they were to consider it, you would lose, right? Well, at page 39 they say, as discussed, CAIL's teachings are insufficient to support obviousness because of significant additional modifications that were not presented in the petition Council, but I see what you're saying on page 39, but you haven't answered the question about page 33 Could you please look at page 33 and then answer the question? So it's 30, page 33, it's the first full paragraph is where there's an alternative holding by the board where they see even considering petitioners later raised modifications to CAIL in its reply But they don't consider, there's no analysis here on how they come to that conclusion It's a conclusionary statement, because the page before, they say they're not going to consider it And here they say even considering it, but there's no analysis Well, I'm not going to defend how wonderful and fulsome the paragraph on page 33 is However, it does have the sentence to which I referred a couple minutes ago The full record, this is the board's analysis of the full record, including the expert testimony on both sides As discussed above, supports that CAIL's teachings are limited and its type of processing of the data stream would not work on DITOM formatted data without significant modifications for which CAIL provides no teachings or guidance Again, there's no explanation there, they ignore all the evidence that was presented And then they come in with this conclusionary statement, which is then followed by another conclusionary statement Which says essentially the same thing, except at that point they put in parenthetically that we're not presented in the petition So it's not clear what they've done The other thing that's really unique about this case Do you want to save any time for rebuttal, counsel? Yeah, I've got two quick points to make and then I'll sit down One thing that's very unique about this case is that this analysis that the board came up with was sua sponte It wasn't raised by SORNA, the first time we saw this was at the final decision Never had an opportunity to address it, never had an opportunity to explain the circumstances that would have hopefully rebutted that in the mind of the board The other issue that's very critical here is that the patent itself is silent as to how all this happens The board found that there's no mention of key value pairs, there's no mention of what parsing or extracting means in the 408 patent And this board has found that... Counsel, you're beyond your time, you've used all your time in your rebuttal time, we're going to hear from the closing counsel now I thought this was four minutes That included all of your time, it was your responsibility, that's why I tried to stop you Okay Thank you Mr. Carroll, please proceed Thank you, may it please the court, your honor I'd like to start off with the Article 3 standing issue As the board understands, there's a three-part test for Article 3 Let me ask you about that, your reply doesn't come out and say it, but comes pretty close to saying that Altamont would have had to admit that it infringes in order to have standing You say your second sentence is, by its own admission, they deny they infringe Is it your view of our law that in the absence of an admission that their product infringes, there's no standing? No, your honor Clearly in each of the cases referenced in our briefing, there were a multitude of factors that were examined by the court You know, the court never focused on one thing But, in my conclusion of reading these cases, oftentimes the appellant did in fact admit that their products were at least implicated, the patent And, you know, perhaps they didn't go so far as to say that there was a... Well, you said that you sued somebody for infringement that does a product almost exactly like theirs How is that not suggesting their product is implicated for infringement? Well, your honor, that's a conclusory statement Altamont would like the court to believe that we as SORNA would sue any other company in the world that makes medical data recording devices That's not what they said, they said you sued a company that makes a product just like theirs Are you referring to the Pax Gear reference, your honor? Yes Okay, and that was in fact a company that was run by the declinant Brian Kavanaugh They said that the product works in the same way, we don't have an infringement case against them, there's not any evidence in the record to test their assertion There's a declaration that says that it operates in the same way, and there's no contrary evidence, right? There is no contrary evidence, but there's also, your honor, no objective evidence for the court to utilize to test that assertion either It's his opinion that they work in the same way, and his statement that they work in the same way, but there is not any evidence He has knowledge of both of them, right? Given his unique circumstances of having worked at the other company, having been involved in the litigation on behalf of the other company, right? That is correct, your honor, yes, that is correct He would in theory have knowledge of how they work He did in fact give an opinion on whether or not his product and the former Pax Gear product infringed the patent, which is the more important question for us No it's not, actually, the more important question is are they likely to get sued by you? And you sued somebody that makes a product they said is identical, they don't have to admit infringement in order to get jurisdiction here I agree that they do not have to admit infringement, but is it sufficient with no other evidence to say I don't think these products infringe, but so on? You have no chance of winning on this issue, your arguments are specious, I suggest you move on to the merits, unless my colleagues disagree, feel free to weigh in if you do Thank you, your honor, I'll move on to the merits As the board noted in the discussion earlier today with my friend, the board did in fact note that even if they had considered the modifications that were necessary to Kale and Dicomvue, it would not have changed their opinion That is absolutely true, and it's also true that Ultimat did not bring up in its initial petition the fact that modifications were necessary Only after Sorna brought up their own argument that in fact a parameter table would not work to parse Dicom data And in fact our expert Dr. Kia explicitly stated that if a parameter table were used on Dicom formatted data that the disk that would be produced by the patent intervention would only have the fields written on it that were the same across all the data inputted So you'd have a disk that would have So if they had done more in their petition, this case would have played out exactly the same way, right? They would have come in and you would have had your expert saying no it doesn't, and the board would have had to weigh the experts, which ultimately in alternative holding it did, right? I agree The problem I have is I don't know where, I guess we're all into line drawing and I'm not sure where the lines ought to be drawn And maybe that's more to the board and we've got a deferential standard of review But I mean there could probably be a number of things that you would come up with in terms of making an argument of non-obviousness that they could or not anticipate But obviously the petition is not going to necessarily respond to every argument you subsequently provide, right? And how are we supposed to discern where to draw the line? I think that fortunately that is not an issue that you, or a decision that you have to make today The question in front of the board today is whether or not the finding of the PTAB is supported by substantial evidence In this case I think it is They did not explicitly refuse to consider the modifications testified on by Dr. Horry Have you relied on the alternative holding on page 33? Excuse me, Your Honor You're relying on their alternative holding on page 33 I am, Your Honor At least they're, yes, I think it could be properly characterized as an alternative holding So I guess all your friend has to say about that is it's a conclusive statement and it's not supported by the record And I guess your answer is no  They explicitly referred to the declaration testimony of both Dr. Horry and Dr. Keough Which discussed in depth the modifications necessary to Kail and Dicombio So I would again stress to the panel today that this is not an issue of waiver Or the board refusing to consider arguments raised by Elton The board considered the arguments and found them lacking And there is substantial evidence in the record to support that conclusion Okay, Mr. Farrell, anything further? Nothing further, Your Honor Okay, moving on to your argument Mr. Farrell, I'll restore two minutes of rebuttal time since I guess you got confused about the clock So please come on up and give one minute Thank you very much, Your Honor This court has held that prior art reference need only be as enabling as at the same level as the disclosure of the patent analyzed That's Constant v. AMD, Inc., 848 F. 2nd, 1560 The patent here in its totality describing how the information is parsed and placed on a label Consists of one sentence that says the first routine parses any Dicomb Part 10 file found in the incoming directory, 52 And it states there's a building image directory which magically contains the patient information file Which isn't addressed otherwise, identified as patient.txt And then at the end it says there's a printer that they acquired from some other company Which uses a merge file which incorporates this patient.txt file That's it. There's nothing about key value pairs There's nothing about, no mention of databases, no mention of how it's stored There's a lot of other language in there about the images and where they go But as to the text that's printed on the labels, that's it. There's nothing else So, based on this court's own holding in the Constant case The Cale reference is that in spades, I mean it does even more It at least gives an option of a parameter table for a person of ordinary skill in the art to consider to use When creating the text database The 408 patent does nothing The other thing to consider So your point is that there's not substantial evidence to support the board's finding that Cale only teaches Taking the entire document as opposed to grabbing parts. Is that right? My point here was that if a faceta, a person of ordinary skill in the art Is expected to understand how to create this text database and burn CDs and put labels on them with the text Based on the 408 patent Then a faceta who the board found was a pretty bright guy With a lot of experience in DICOM and computer programming Also could utilize Cale to do the same thing Okay, thank both counsel. This case is taken under submission Thank you All rise The honorable court is adjourned until tomorrow morning at 10 a.m.